RENDERED:  APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0229-MR

RICHARD DEVORE												APPELLANT


												APPEAL FROM JEFFERSON CIRCUIT COURT
v.										HONORABLE BARRY WILLETT, JUDGE
												ACTION NO. 18-CI-005741


COMMONWEALTH OF KENTUCKY,
KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION; AND
UNITED PARCEL SERVICE, INC.								APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

ACREE, JUDGE:  Richard DeVore appeals the January 15, 2020 order of the

Jefferson Circuit Court affirming the Kentucky Unemployment Insurance

Commission's ("KUIC") decision upholding the denial of his request for

unemployment benefits.  After careful consideration, we affirm.

# FACTS AND PROCEDURE

DeVore was employed by United Parcel Service Co.[1] ("UPS") as a Flight Crew Scheduling Technician. As part of his job, he was authorized to release crewmembers early from their shifts under certain circumstances. However, if DeVore released a crewmember early, he was responsible for entering a release code into UPS's computer system reducing the number of hours for which that crewmember would be compensated.

On May 19, 2018, DeVore released a crewmember from his shift six hours early, but he did not enter the release code into UPS's computer system. This resulted in the crewmember remaining in paid status for his entire shift. As a result, DeVore was terminated on May 25, 2018, for "falsification of documentation." (Trial Record ("T.R.") at 100.)

DeVore filed for unemployment benefits on June 3, 2018 with the local office of the Kentucky Division of Unemployment Insurance ("the Division"). His claim for benefits was denied on June 20, 2018. (*Id.* at 115.) The Division found that DeVore was disqualified from receiving benefits because he "knowingly violated a reasonable and uniformly enforced rule of the employer." (*Id.*) The only evidence presented by UPS of disqualification was a form

---

[1] DeVore identifies UPS as United Parcel Service, Inc.

-2-

describing the reason for DeVore's termination and an email between two UPS employees.[2] (*Id.* at 109-14.)

DeVore appealed to the Unemployment Appeals Branch. In his appeal letter, DeVore acknowledged UPS had a policy allowing crewmembers to be released from work early for a reduction in pay. However, he contended there was no explicit policy forbidding him from allowing a flight crewmember to leave early and still get paid for an entire shift. (*Id.* at 118.) A telephonic evidentiary hearing was held before a referee on July 10, 2018. UPS was not present and DeVore was the only person to testify. The following exchange took place:

> **Referee**: Okay. When did they say that the document falsification occurred; on what date?
>
> **DeVore**: May 19, 2018.
>
> **Referee**: Okay. And what did they say that you did on that day that was the falsification of the document?
>
> **DeVore**: They said that in the computer I did not put a release code for the crewmember.
>
> **Referee**: What does that mean? I don't understand you.
>
> **DeVore**: And so, by -- by doing that, I violated their policy.
>
> **Referee**: Okay. What is it really -- what does it mean to put a release code in the computer?

---

[2] The email is between two apparent UPS employees and contains abbreviations and terminology that this Court is unfamiliar with. We are unable to understand its meaning.

**DeVore**: That means, I told a crewmember that he can be released from duty for that particular date --

**Referee**: So, you sent someone home?

**DeVore**: -- or our timeframe.

**Referee**: You sent someone home?

**DeVore**: Yes.

**Referee**: Okay. And then, what do -- what does it mean to not put the release code in? What were the -- what was the effect of that?

**DeVore**: If I did not do that, it would be a pay issue.

**Referee**: So, they would be paid for the whole day?

. . . .

**Referee**: Okay. On May 19th, 2018, did you fail to put in the release code when you sent this crew member home early?

**DeVore**: I did not put the release code up on the line.

**Referee**: Why not?

**DeVore**: Because at the time, you know, there was no really written -- a policy or -- in my opinion, no policy or rule that the company and you know, in its training manuals that really prohibited that. So, I had the option to either do it or do it -- or not do it.

**Referee**: You had the option to falsify documentation?

-4-

**DeVore**: Well, in my opinion, that wasn't falsifying documentation.

**Referee**: Okay. You sent someone home early and you didn't note that; why?

**DeVore**: It was that -- it was --

**Referee**: How is that not falsification?

**DeVore**: It was -- it was a discretion. You know -- but just beforehand -- you know, before 2016, we had the option to release a crew member and that was even done by crew scheduling management personnel.

. . . .

**Referee**: All right, I'm going to -- I'm just going to go ahead and cut to the heart of the matter. In your appeal letter, it says that a -- a flight crew member to request to be released from his company obligations earlier than normal and take a reduction in pay; is that correct?

**DeVore**: Correct.

. . . .

**Referee**: If they go home early, they had to take a reduction in pay; is that correct?

**DeVore**: Correct.

**Referee**: Okay. And you failed to put in the code to indicate that he went home early?

**DeVore:** No, I did not put the code in there.

(*Id*. at 90-92.)

Based on DeVore's own admission, the referee concluded he was discharged for dishonesty and disqualified him from benefits. (*Id*. at 146-47.) DeVore appealed that decision to the KUIC. The KUIC affirmed the Referee's decision on September 12, 2018. (*Id*. at 42-43.) It found that DeVore intentionally failed to enter the release code, which amounted to a deliberate falsification of business records. (*Id*. at 157-158.) It further found DeVore's allegation that he had the discretion to allow an employee to leave work early without a reduction in pay not credible. (*Id*.)

DeVore then sought judicial review from the Jefferson Circuit Court, contending that substantial evidence did not support the KUIC's decision to disqualify him from benefits and that it improperly placed the burden of proof on him to prove that he wasn't disqualified. The circuit court affirmed the KUIC's decision on January 15, 2020. This appeal followed.

## **STANDARD OF REVIEW**

"The standard of review of an unemployment benefit decision is whether the Commission's findings of fact were supported by substantial evidence and whether the agency correctly applied the law to the facts." *Downey v. Ky. Unemployment Ins. Comm'n*, 479 S.W.3d 85, 88 (Ky. App. 2015). Substantial evidence is "evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Kentucky Unemployment Ins. Comm'n v. Cecil*,

-6-

381 S.W.3d 238, 245 (Ky. 2012). "If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed." *Id.* at 246. "As the fact-finder, the KUIC has the exclusive authority to weigh the evidence and the credibility of the witnesses." *Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 626 (Ky. App. 2002).

## ANALYSIS

DeVore first argues that UPS failed to present any competent evidence supporting the KUIC's decision to disqualify him from benefits due to dishonesty. This is merely a challenge to the sufficiency of the evidence. DeVore places great emphasis on the fact that UPS did not appear at the evidentiary hearing before the Referee to provide sworn testimony and that the only evidence it presented was the aforementioned form describing why he was terminated and an email. We conclude that DeVore's own admissions of dishonesty constitute substantial evidence supporting the KUIC's decision.

The search for substantial evidence is not limited to what only one party presents. It encompasses the record as a whole. It is not uncommon for a party to present substantial evidence supporting his opponent's position. That was the case here. In determining whether DeVore was disqualified, the KUIC was not

-7-

limited to reviewing only evidence presented by UPS, but was free to base its decision on the admissions of DeVore. It did.

KRS[3] 341.370 provides, in relevant part:

(1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:

. . . .

(b) He has been discharged for misconduct or *dishonesty* connected with his most recent work, or from any work which occurred after the first day of the worker's base period and which last preceded his most recent work[.]

KRS 341.370(1)(b) (emphasis added). Accordingly, dishonesty is statutorily disqualifying misconduct. Once it is shown that an employee has acted dishonestly, the employee is disqualified regardless of whether the underlying policy is uniformly enforced.

Here, the KUIC clearly reviewed the totality of the record, including the evidentiary hearing before the referee. The KUIC based its disqualification on DeVore's acknowledgement that UPS had a policy requiring crewmembers to take a reduction in pay if they were released early and his sworn admission to releasing a crewmember without entering the release code into the computer system. This, alone, is competent and substantial evidence supporting a finding of dishonesty.

---

[3] Kentucky Revised Statutes.

DeVore next contends that both the referee and the KUIC shifted the burden of proof onto him and effectively required him to disprove his disqualification. We disagree.

The employee seeking unemployment insurance "bears the overall burden of proof regarding his entitlement to benefits." *Alford v. Kentucky Unemployment Ins. Comm'n*, 568 S.W.3d 367, 370 (Ky. App. 2018). However, "the employer bears the burden of proof in establishing that the claimant should be disqualified from receiving benefits because of misconduct." *Id.*

Regarding the referee, DeVore asserts that after he presented evidence of qualification, the referee shifted the burden by continuing to question him on the reason he was fired. In other words, DeVore contends that the referee should have ended his inquiry once he submitted sufficient evidence of qualification of benefits. However, a referee "shall, if necessary to secure full information on the issues, examine each party who appears and witnesses." 787 KAR[4] 1:110 Section 1(4)(a)(2). One issue before the referee was disqualification. To secure all information necessary to resolve the issue, the referee was required to question Devore on the reason for his termination. This is not burden shifting.

Likewise, the KUIC did not engage in improper burden shifting. The KUIC, in its opinion, stated, "The employer trying to show a disqualification under

---

[4] Kentucky Administrative Regulations.

KRS 341.370 must bear the burden of proof by a preponderance of credible evidence." (T.R. at 157.) Accordingly, the correct standard was applied.

DeVore takes further issue with the fact that the KUIC found his statement that he had the discretion to allow an employee to leave work early without a reduction in pay not credible. He states that the referee (and therefore KUIC) had "no reliable, evidence-based way to assess the credibility of his explanation. KUIC's decision to find that his testimony was not credible was based wholly on the referee's uneducated impression of Mr. Devore's testimony and in the total absence of any opportunity for Mr. DeVore to support his testimony by cross-examining UPS witnesses."

This Court fails to see how this constitutes burden shifting. Nonetheless, KUIC is responsible for weighing the credibility of the evidence. Here, DeVore admitted that employees were allowed to leave early, with a reduction in their pay. He then contradicts his own testimony by stating he has the discretion whether or not their pay is reduced. It is obvious to this Court why the KUIC and the referee found this testimony not credible. A credibility assessment is not based on the assessor's expertise in the witness's own field; it is based on common human experience in assessing whether statements asserted as truth are believable.

We find that neither the referee or the KUIC shifted the burden to DeVore.

## **CONCLUSION**

Based on the foregoing, we affirm the January 15, 2020 order of the Jefferson Circuit Court

ALL CONCUR.

BRIEFS FOR APPELLANT:

John S. Friend
Robert W. "Joe" Bishop
Lauren E. Freeman
Anita E. Zipfel
Louisville, Kentucky

BRIEF FOR APPELLEE UNITED
PARCEL SERVICE CO.:

Tony C. Coleman
Amir J. Nahavandi
Louisville, Kentucky

BRIEF FOR APPELLEE
KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION:

Sam Flynn
Frankfort, Kentucky